710 A.2d 358

**Theodore Martin HARCUM, Jr.**

v.

**STATE of Maryland.**

**No. 1280, Sept. Term, 1997.**

Court of Special Appeals of Maryland.

May 28, 1998.

David Alan Thompson (Stephen E. Harris, Public Defender and Melissa M. Moore, Asst. Public Defender, on the brief), Baltimore, for appellant.

Devy Patterson Russell, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Christian J. Jensen, State's Atty. for Caroline County, Denton, on the brief), for appellee.

Argued before MURPHY, C.J., and DAVIS and HARRELL, JJ.

DAVIS, Judge.

Appellant Theodore Martin Harcum, Jr., appeals from a June 18, 1997 judgment of the Circuit Court for Caroline County, convicting him of failure to surrender after forfeiture of bail. On July 29, 1997, he was sentenced to one year and one day imprisonment, with six months suspended, to be served consecutive to any other sentence already being served and, upon his release, to one year of supervised probation. Appellant timely noted this appeal and presents for our review one issue which we restate as follows:

Whether there was sufficient evidence to sustain his conviction.

## FACTS

On May 16, 1996, Patricia Childs, a licensed bail bondsman, posted $40,000 bail for appellant, who had been charged with, *inter alia,* assault with intent to murder and escape from confinement. On October 24, 1996, the circuit court sent a summons addressed to appellant at 315 State Street, Seaford, Delaware, informing him of a November 20, 1996 scheduled court date.

On the scheduled trial date, appellant did not appear in court, his bail was forfeited, and a bench warrant issued for his arrest. Two days later, the court sent a notice to Childs's office, advising her of appellant's failure to appear and of the bench warrant. That same day, appellant's summons was returned to the court unclaimed. According to Barbara Little, a circuit court clerk, the 315 State Street address was the only address on file. Appellant, however, testified that he had moved to another address in Seaford, Delaware, and had provided the new address to the court.

Childs immediately contacted appellant's father and called him several times thereafter. She asked that he notify appellant and instruct him to turn himself in to either the circuit court or the Sheriff's Department. Childs also contacted appellant's girlfriend, Kem Nichols, and her mother, Darlene Nichols, to inquire whether they knew of appellant's where-

abouts. Appellant, however, never contacted Childs or surrendered himself.

On December 9, 1996, Childs hired a bail enforcement agent[1] to apprehend appellant. On December 20, 1996, the bench warrant was served on appellant. Childs incurred fees from the bail enforcement agent in the amount of $4,600 and that amount was reimbursed to her office by appellant's father.

Appellant testified that, during the time that the bench warrant was outstanding, his father was in contact with him and never told him about it. Patricia Thompson, appellant's probation officer, testified that on another occasion, appellant did not appear for a case in Talbot County and he did not send her verification of a conflict.

Appellant was convicted of failure to surrender after forfeiture of bail and this appeal followed.

## DISCUSSION

 The test for evidentiary sufficiency is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Velez v. State,* 106 Md.App. 194, 201, 664 A.2d 387 (1995), *cert. denied,* 341 Md. 173, 669 A.2d 1361 (1996). When we evaluate the sufficiency of the evidence in a non-jury trial, we will not set aside the judgment of the trial court unless it is clearly erroneous, giving due regard to the trial court's opportunity to judge the credibility of the witnesses. *State v. Raines,* 326 Md. 582, 589, 606 A.2d 265 (1992).

### I

Appellant's sole contention is that he was not in violation of Art. 27, § 12B because he was in custody within the thirty-day grace period allowed under the statute. The State, conceding

---

1. This is more commonly referred to as a "bounty hunter."

that appellant was in custody "within the statutorily granted grace period," argues that he nevertheless "willfully" failed to surrender himself "prior to the expiration of the thirtieth day."

MARYLAND CODE (1957, 1996 REPL.VOL.), ART. 27, § 12B, governing the failure to surrender after forfeiture of bail, provides:

(a) *Bench warrant.*—Whenever any person charged with a criminal offense who has been admitted to bail or released on recognizance forfeits the bail or recognizance and willfully fails to surrender himself a bench warrant shall be issued for his arrest.

(b) *Penalty.*—Any person who has been admitted to bail or released on recognizance in any criminal case in this State who forfeits the bail or recognizance and willfully fails to surrender himself within thirty days following the date of forfeiture shall be sentenced as provided herein. If the bail or recognizance was given in connection with a charge of felony or pending an appeal, certiorari, habeas corpus, or post conviction proceeding after conviction of any offense, the person shall be fined not more than $5,000 or imprisoned in the penitentiary for not more than five years or both. If the bail or recognizance was given in connection with a charge of committing a misdemeanor, or for appearance as a witness, the person shall be fined not more than $1,000 or imprisoned for not more than one year, or both.

(c) *Contempt proceedings.*—Nothing in this section shall interfere with or prevent the exercise by any court of its power to punish for contempt.

At the close of the State's case-in-chief, appellant moved for judgment of acquittal and made the following argument:

[Appellant's Counsel]: ... The first prong of the argument is, that as the State's exhibits demonstrate, that the bail was forfeited, I'm going to go first to this, and then I'll go back in time. The bail was forfeited on November 20th of 1996 and the return of service on [appellant] was December the 20th, of 1996. Now there's no testimony other

than the hiring of a bounty hunter that the bounty hunter actually apprehended [appellant] as opposed to [appellant] turning himself in to the bounty hunter or to anyone else, or to the Clerk, or to the Court. Second prong would be, he has thirty (30) days to surrender himself, within thirty (30) days and that should be thirty days. And if you count, my understanding is that you don't count the day of the event, but you start counting the very day after, and if you count November 21st through December 20th, December 20th was the 30th day. There's no testimony that would indicate he was, even assuming he was apprehended as opposed to turning himself in, that it didn't occur one minute after midnight, where he would have had the remainder of the day to turn himself in and was not given that opportunity to do so. If for instance, the bonds people had the very next day after being notified of forfeiture, had apprehended [appellant] and had brought him in in chains and had him locked up, it would seem to me, that it would—this statute, would not apply because he has to willfully not surrender himself within thirty (30) days. So he has thirty (30) days to surrender himself and that's assuming, for the moment, that there's a legitimate reason for him to surrender himself in the first place. Having not shown that it had gone beyond the thirty (30) day period, the State is precluded from finding [appellant]—or attempting to find and the Court is precluded from attempting to find [appellant] guilty, under this particular statute because the demonstration has to be that he has willfully failed to surrender himself within the thirty (30) day period. December 20th would have been the thirtieth day. In addition to that, the testimony is, that we got to [sic] a Circuit Court case here where there was a mailing sent to him and a certified letter that came back unclaimed. There is no indication in the record that [appellant] even knew of the existence of the hearing on November the 20th of 1996 and therefore would not have been in a position to respond to the Court's notice had he not been served with notice. It is fairly common in these

proceedings that if the Defendant is not found, they issue a bench warrant and in fact, usually to have him come in so they can start the proceedings. But this is different because this is an actual charge of failing to surrender after forfeiture of bond. There's been no showing that [appellant] knew that there was a proceeding on November 20th such that he would know that there would have been a bond forfeiture that had occurred or deliberately attempted to avoid coming in. There's no showing from the State because there's no notice of any hearing and therefore having had no notice of hearing, having not arrived because he did not receive a notice, and therefore knowingly failing to surrender himself on something that he didn't know, State has not proved that he knew existed at that time, would be another reason why the charge under failing to surrender after forfeiture of bail should fall....

The court, reserving its ruling until the close of all the evidence, held as follows:

THE COURT: ... I think the way the law is written ... he must *wilfully surrender within thirty (30) days*, it doesn't say before thirty (30) days, it doesn't say after thirty (30) days and it doesn't say or on thirty (30) days. It says within thirty (30) days. And I ... think that the intent was that he had to do it within thirty (30) days and when the thirtieth (30th) day ... and the meter clicked off on the thirtieth (30th) day that he was overdue, so I am going to deny your Motion....

Article 94, § 2 (1957, 1995 Repl.Vol.) [2] governs how time is computed:

In computing any period of time prescribed or allowed by any applicable statute, the day of the act, event, or default, after which the designated period of time begins to run is

---

**2.** Effective October 1, 1997, § 6, ch. 31, Acts 1997, transferred § 2 of Article 94 to § 36 of Article 1.

not to be included. *The last day of the period so computed is to be included* unless:

(1) It is a Sunday or a legal holiday, in which event the period runs until the end of the next day, which is neither a Sunday or a holiday; or,

(2) the act to be done is the filing of some paper in court and the office of the clerk of said court on said last day of the period is not open, or is closed for a part of a day, in which event, the period runs until the end of the next day which is neither a Sunday, Saturday, a legal holiday, or a day on which the said office is not open the entire day during ordinary business hours. When the period of time allowed is more than seven days or less, intermediate Sundays and holidays shall not be counted in computing the period of time.[3]

(Emphasis added.)

■ Viewing the evidence in the light most favorable to the State, we do not believe that there was sufficient evidence to sustain appellant's conviction. In October 1996, appellant was sent a summons to appear in court on November 20, 1996. The summons was sent to the only address on file with the

---

3. Maryland Rule 1–203, pertaining to time computation, is consistent with the statute.

(a) Computation of Time After an Act, Event, or Default.—In computing any period of time prescribed by these rules, by rule or order of court, or by any applicable statute, the day of the act, event, or default after which the designated period of time begins to run is not included. If the period of time allowed is more than seven days, intermediate Saturdays, Sundays, and legal holidays are counted; but it the period of time allowed is seven days or less, intermediate Saturdays, Sundays, and legal holidays are not counted. The last day of the period so computed is included unless:

(1) it is a Saturday, Sunday, or legal holiday, in which event the period runs until the end of the next day which is not a Saturday, Sunday, or legal holiday; or

(2) the act to be done is the filing of some paper in court and the office of the clerk of that court on the last day of the period is not open, or is closed for a part of a day, in which event the period runs until the end of the next day which is not a Saturday, Sunday, legal holiday, or a day on which the office is not open during its regular hours.

court. Appellant did not appear in court and forfeited bail. Childs made several attempts to locate appellant. She spoke with appellant's father several times and also spoke with appellant's girlfriend and her mother. Appellant testified that, during the time that the bench warrant was outstanding, his father was in contact with him.

Childs eventually hired a bounty hunter to apprehend appellant. She incurred an expense of $4,600 from the bounty hunter, which was reimbursed by appellant's father, who would have been liable for $40,000 if appellant had not been apprehended within ninety days. The State relies on Childs's testimony that appellant never surrendered himself and urges that it may reasonably be inferred that the expenses paid to the bounty hunter were for the apprehension of appellant. Coupled with the evidence that the court did not receive notice of appellant's new address, the State argues, an inference could be drawn that appellant willfully failed to surrender.

It is undisputed that the bench warrant was served on appellant on December 20, 1996, the thirtieth day after the forfeiture. The court, however, erred in finding that "day thirty" is not "within thirty days." It is clearly the last day of the statutory period and therefore, pursuant to Art. 94, § 2, it is included. The trial court, however, opined that "he must willfully surrender within thirty days. . . ." Article 27, § 12B provides that, whenever one "who has been admitted to bail . . . forfeits the bail . . . and willfully fails to surrender himself, a bench warrant shall be issued for his arrest." Patently, the requirement that one "willfully" fail to surrender oneself is intended to address an extraordinary circumstance when, for instance, the person admitted to bail is hospitalized, in a coma, or otherwise incapacitated such that he or she is unable to notify the authorities of his or her inability to surrender himself or herself.

 Whether the bounty hunter had to apprehend appellant or appellant surrendered himself to Childs is irrelevant. The statute explicitly requires a forfeiture of bail or recognizance and a willful failure to surrender within thirty days

following the date of the forfeiture. In other words, when there is a recapture or a surrender within the thirty-day period, there cannot be a willful failure to surrender within thirty days since what is prohibited under the statute, i.e., willful failure to surrender oneself, must occur after the thirty days have elapsed. Moreover, assuming, *arguendo*, that we were to conclude that the requirements of the statute were satisfied upon proof that appellant was recaptured rather than that he surrendered, the lower court could only infer that appellant was recaptured from the facts that Childs expended $4,600 for the bounty hunter in conjunction with Childs's testimony that appellant never turned himself in to her office. Such an inference would be insufficient to establish beyond a reasonable doubt that appellant was recaptured and hence willfully failed to surrender himself, even if we were inclined to accept the court's interpretation of the statute. In sum, the only logical reading of the statute is that a determination whether appellant has willfully failed to surrender himself is premised on his remaining at large after the thirty-day grace period has elapsed.

**JUDGMENT OF THE CIRCUIT COURT FOR CARO-LINE COUNTY REVERSED.**

**COSTS TO BE PAID BY CAROLINE COUNTY.**